IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL BROE and HEIDI BROE, | : : | No. 3:15cv985 |
| Plaintiffs | : : | (Judge Munley) |
| v. | : : | |
| STEVEN MANNS, | : | |
| Defendant | : | |

**MEMORANDUM**

Before the court for disposition is a motion in limine filed in advance of the pretrial conference by Plaintiffs Daniel and Heidi Broe. The plaintiffs seek to preclude the testimony of Defendant Steven Manns' expert witness, Michael Raklewicz, M.D. The motion has been fully briefed and is ripe for disposition.

**Background**

This case arises from a rear-end automobile collision that occurred on June 7, 2013. Plaintiffs were traveling in their vehicle on State Route 590 in Hamlin, Pennsylvania, when they slowed down to avoid a bear crossing the roadway. Defendant, who was driving an automobile behind plaintiffs, failed to brake his vehicle as plaintiffs slowed down. Ultimately, the front of defendant's automobile collided with the back of plaintiffs' automobile.

Plaintiffs then filed a two-count complaint against the defendant alleging negligence and loss of consortium.  The complaint alleges, *inter alia*, injury to the Plaintiff Daniel Broe's neck and back.  Plaintiffs moved for partial summary judgment on liability.  We granted the motion, and granted judgment to the plaintiffs on the issue of defendant's liability for the accident.  (Doc. 65, Ord. of Sept. 27, 2016).

During discovery, defendant engaged Michael Raklewicz, M.D., to perform an independent medical examination ("IME") on Plaintiff Daniel Broe.  He performed the IME and then issued a report on February 17, 2016.  (Doc. 47-1).  The report noted that plaintiff had a history of ongoing persistent neck pain leading up to the automobile accident.  He opined that Daniel may have suffered an exacerbation of a prior neck injury and that any exacerbation caused by the accident would have resolved within six weeks to three months with conservative treatment.  (Doc. 47-1, Raklewicz Report at 12).  Plaintiffs move to preclude the testimony of Dr. Raklewicz regarding any complaints Plaintiff Daniel Broe had of neck pain before June 7, 2013, that is prior to the accident.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C.

§ 1332. Plaintiffs are citizens of Vermont, and defendant is a citizen of Pennsylvania. (Compl. ¶ 1). Because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over the case. See 28 U.S.C. § 1332 ("[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"). As a federal court sitting in diversity, the substantive law of Pennsylvania applies to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Discussion**

The plaintiffs challenge the testimony of defendant's medical expert. Plaintiff's frame the challenge as one based upon Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Before addressing the substance of the motion, we will address a procedural issue that has arisen.

The undersigned judge has a specific rule with regard to Daubert motions. It states, in pertinent part, "If the [challenged] expert is not deposed, the complaining party must depose the expert." (Doc. 16, Case

Management Order of Aug. 7, 2015).  Instantly, plaintiffs seek to preclude an expert witness, but that expert has not been deposed.  In lieu of deposing the witness, plaintiffs moved to file the Daubert motion without taking the expert's deposition.  Plaintiffs assert that no deposition is needed because the expert's deficiency is revealed by a review of his report alone.  We agree with the plaintiffs that their arguments do not require us to review the expert's deposition and will grant the motion to submit the challenge to the expert witness without deposition.  Thus, we move on to the substance of the motion in limine.

The admissibility of expert testimony is a question of law governed by Rule 702 of the Federal Rules of Evidence ("Rule 702"), Daubert, and its progeny.  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

Rule 702 has largely evolved from Daubert and later Supreme Court cases that have clarified or extended its holding.  As a "gatekeeper," the trial judge "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589.  The "trial judge's general 'gatekeeping' obligation – applies  . . . also to testimony based on 'technical' and other 'specialized' knowledge." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).

The Third Circuit has interpreted Rule 702, Daubert, and its progeny as imposing three restrictions on the admission of expert testimony: qualifications, reliability and fit.  In re Paoli R.R. Yard PCB Litig., 35 F. 3d 717, 741-43 (3d Cir. 1994) cert. denied, 513 U.S. 1190 (1995) ("Paoli II"); Elcock v. Kmart Corp, 233 F.3d 734, 741 (3d Cir. 2000).  The party that wishes to introduce expert testimony bears the burden of demonstrating that the testimony is admissible by a preponderance of the evidence. Daubert, 509 U.S. at 593 (citing Bourjaily v. United States, 483 U.S. 171, 175-76 (1987)); In re TMI Litig., 193 F.3d 613, 663 (3d Cir.1999).

First, an expert must be qualified.  A qualified expert is required to have specialized knowledge in his area of testimony, which may be based in practical experience as well as academic training and credentials.

Elcock, 233 F. 3d at 741. The specialized knowledge requirement has been interpreted liberally in the substantive as well as the formal qualification of experts; "'at a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman . . . .'" Id. (quoting Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir.1998)).

Second, an expert must be reliable. While no definitive checklist of factors exists that courts must follow, the Supreme Court has offered several grounds to be considered in determining the reliability of proposed expert testimony. Daubert, 509 U.S. at 592-594. The Third Circuit has incorporated these points into a more comprehensive, but non-exhaustive, set of factors that a District Court must weigh:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Paoli II, 35 F. 3d at 742 n.8.

These factors, however, are "simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony

6

admitted." Heller v. Shaw Industr., Inc., 167 F.3d 146, 152 (3d Cir.1999). Related to these factors, "a trial court may consider one or more. . . when doing so will help determine that testimony's reliability. But . . . the test of reliability is 'flexible,' and the Daubert list of specific factors neither necessarily nor exclusively applies to all experts or in every case." Kumho Tire Co., Ltd., 526 U.S. at 141. "[R]elevant reliability concerns may focus upon personal knowledge or experience" rather than "scientific foundations." Id. at 150.

An expert is deemed reliable if his or her opinion is "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." Paoli II, 35 F. 3d at 742 (quoting Daubert, 509 U.S. at 590); In re TMI Litig., 193 F.3d at 664 (3d Cir. 1999). The focus is not upon the expert's conclusions, but rather upon his or her methodology; the issue is whether the evidence should be excluded because potential flaws are large enough that the expert lacks good grounds for his or her conclusion. Paoli II, 35 F.3d at 746. Subsequently, an "expert's testimony must be accompanied by a sufficient factual foundation before it can be submitted to the jury." Elcock, 233 F. 3d at 754 (3d Cir. 2000) (citing Gumbs v. Int'l

Harvester, Inc., 718 F.2d 88, 93 (3d Cir.1983)).

Third, expert testimony must "fit" the subject matter at issue. Expert testimony fits the subject matter if it assists the trier of fact in understanding the evidence or to determine a fact in issue. Daubert, 509 U.S. at 591; Schneider ex rel Est. of Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003). "Admissibility thus depends in part upon 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'" Oddi v. Ford Motor Co. 234 F.3d 136, 145 (3d Cir. 2000) (quoting Paoli II 35 F.3d at 743). Plaintiffs, however, do not have to prove their case twice. They "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." Paoli II, 35 F.3d at 744.

Thus, a Daubert analysis examines qualifications, reliability and fit. We do not examine the experts conclusions. Importantly, "[t]he analysis of the conclusions themselves is for the trier of fact when the expert is subjected to cross-examination." Kannankeril v. Terminix Int'l Inc., 128 F.3d 802, 806 (3d Cir. 1997). In other words, "vigorous cross-

examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 597. The expert's credibility, which plaintiff here attacks, is a determination for the trier of fact. Id.

In the instant case, plaintiffs do not attack the expert's qualifications, reliability or fit. Rather plaintiffs challenge the conclusions that the expert reached. Plaintiffs complain that the doctor's report is "internally inconsistent".[1] Disagreeing with the expert's conclusions is not a proper basis to preclude the expert. Plaintiffs can challenge the expert's conclusions through cross-examination and the presentation of their own

---

[1] The report concludes that if the accident caused an exacerbation of the plaintiffs' prior neck problems, that exacerbation would have resolved itself within six weeks to three months. (Doc. 47-1, Raklewicz Rep. at 13). Dr. Raklewicz also noted that plaintiff had a history of neck pain and had seen a doctor with neck pain complaints in January 2012. (Id.) That was approximately six months before the accident. Plaintiff evidently reads the report to mean that the complaints in January 2012 would have been resolved by June 2013 as it is more than three months later. Accordingly, it is inconsistent for the expert to opine that the accident caused an exacerbation of that injury if it would have been healed by then. Further, if such complaints of pain resolve themselves so quickly, it is inaccurate for the expert to conclude that Daniel Broe had a history of ongoing, persistent neck pain. We find that these matters are not the proper subject of a Daubert motion.

9

witnesses.

Plaintiffs also argue that the expert witness's report attempts to undermine the court's charge to the jury with regard to whether aggravation of a preexisting condition is compensable.  A review of the expert report however, reveals that it is not a treatise on the law or an attempt to usurp the court's role in charging the jury on the law.  Thus, this ground for precluding the expert is not convincing.

**Conclusion**

In conclusion, we find no reason to preclude defendant's medical expert.  Any disagreement plaintiffs have with the expert can be dealt with through cross-examination, presentation of contrary evidence and proper jury instructions.  See Daubert, 509 U.S. at 597.  Accordingly, the plaintiffs' motion in limine will be denied.  An appropriate order follows.


**Date: Dec. 5, 2016**                               **s/ James M. Munley**
                                                    **JUDGE JAMES M. MUNLEY**
                                                    **United States District Court**